# CONFIDENTIAL FLSA SETTLEMENT AGREEMENT
# AND MUTUAL GENERAL RELEASE

1. This FLSA Settlement Agreement ("Agreement") is entered into by and between Plaintiff, Iran Saez ("Saez") and Defendants Loman Distributors Inc. ("Loman" or the "company") and Manuel Lopez, individually ("Lopez") (collectively "Defendants"), with each party intending to be bound by the terms and conditions of this Agreement. For purposes of this Agreement, Saez and Defendants are collectively referred to as the "Parties". For purposes of this Agreement, Loman includes the company's owners, employees, parents, subsidiaries, divisions, affiliates, stockholders, predecessors, successors, assigns, agents, contracting parties, directors, insurers, and officers. This Agreement shall be effective upon the Parties execution of the Agreement, the expiration of the period required by the OWBPA, and Court approval.

2. **Non-Admission.** This Agreement does not constitute an admission by Defendants of any violation of any law or statute. The Parties agree that neither this Agreement nor the furnishing of consideration shall be deemed or construed for any purposes as evidence or an admission of liability or wrongful conduct of any kind by the Defendants.

3. **Litigation.** Saez filed a lawsuit against Defendants in the United States District Court, Southern District of Florida, (Case No. 22-23485-CV-LENARD/LOUIS) (the "pending action"), alleging violations of the Fair Labor Standards Act ("FLSA') for unpaid overtime and for unpaid minimum wages. Pursuant to the terms of the Parties' settlement that are set forth in this Agreement, the Parties intend to fully and finally resolve the pending action and all aspects of Saez' claims in the pending action.

4. **Payment to Saez.** In consideration for signing this Agreement and the fulfillment of the promises herein, Defendants agree to pay Saez the total sum of $7,500.00 ("Total Sum"). The total sum is payable within fourteen (14) calendar days from when the Court approves the parties' settlement, as follows:

> 1) a company payroll check in the gross amount of $750.00 (less standard payroll deductions), payable to Saez representing the alleged unpaid wages; and,
>
> 2) a company check in the amount of $750.00 for which a Form 1099 shall be issued, payable to Saez representing liquidated damages; and,
>
> 3) a company check in the amount of $6,000.00, for which a Form 1099 shall be issued, payable to Peregonza The Attorneys representing attorney's fees and costs.

Saez and Peregonza The Attorneys shall provide Defendants' counsel, with IRS Forms W-9 concurrent with Saez' execution of this Agreement.

Defendants, are jointly and severally responsible for payment of all sums due herein.

The above referenced settlement checks shall be delivered to Peregonza The Attorneys c/o Nathaly Saavedra, Esq. at 5201 Blue Lagoon Drive, Suite 290, Miami, FL 33126.

Saez acknowledges that the payment of the monies by Defendants identified herein constitutes full, complete and uncompromised payment of any unpaid wages and related damages allegedly owed to him for the entire period of his former employment with the Defendants up to the time of execution of this Agreement and that he sought in the pending action. Saez agrees not to pursue any additional claim against Defendants based on alleged unpaid overtime or unpaid minimum wages that Saez claimed in the pending action. Saez agrees that upon receipt of the settlement funds described in Paragraph 4 above, that all of his claims raised in the pending action will be fully paid and satisfied and therefore moot.

5. **Payment of Applicable Taxes.** Saez is and shall be solely responsible for all federal, state, and local taxes that may be owed by Saez by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Saez agrees to indemnify and hold the Defendants harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed by the Internal Revenue Service or other governmental agencies regarding any tax obligations that may arise from the monetary consideration made to Saez under this Agreement unless such liability is caused by an action or inaction of Defendants.

6. **Attorneys Not Tax Experts.** The Parties acknowledge that the attorneys involved in this Settlement Agreement or the Litigation do not claim to be experts in tax matters. The Parties further acknowledge and agree that they have neither received nor relied on any tax advice or information from any attorney involved in negotiating this Settlement Agreement or the Litigation.

7. **Voluntary Dismissal of Pending Action.** Upon the Parties' execution of this Agreement, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982), the Parties agree to file a Joint Motion for Approval of the Parties' settlement jointly requesting that the Court approve this Agreement and enter an order dismissing the pending action with prejudice, and to retain jurisdiction to enforce the terms of this Agreement.

8. **Release of Claims.** Plaintiff acknowledges that after the payment of the Settlement Sum in Paragraph 4, he has been fully paid for all hours worked, he will not pursue any claims for any wages, (including but not limited to any minimum wage or overtime claims), bonuses, and compensation to which he may have been entitled by virtue of his former employment with Defendants. Plaintiff affirms that, by signing this Agreement, he forever waives any right to any compensation (including but not limited to any minimum wage or overtime claims), severance, leave of absence, benefits or other payments of any kind from Defendants.

9. **Full Mutual General Releases.** In consideration for the promises contained in this Agreement, the Parties unconditionally release and discharge each other from any and all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which either Party now owns or holds, or has owned or held against each other, including, but not limited to, any and all claims, demands, liabilities, causes of action, all claims that were or could have been raised in the Litigation, and all incurred attorney's fees and costs, which arise out of, or are in any way connected with Plaintiff's employment with, or the

separation of Plaintiff's employment with the Employers, or which arise out of or are in any way connected with any loss, damage, or injury whatsoever to either Party resulting from any act or omission by or on the part of the other committed prior to the date of this Agreement.

    A.    Plaintiff generally releases, satisfies and forever discharges the Employers of and from all actions, claims and demands, both known and unknown, arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §201,*et. seq.*, which Plaintiff ever had, now has or may have against the Employers. Employers also so release the Plaintiff and forever discharge him according to the same terms, and with respect to Plaintiff's employment with Employers.

    B.    Plaintiff represents that, with respect to the claims he is waiving, he is waiving not only his right to recover money or other relief in any action that he might institute under the Fair Labor Standards Act, but he is also waiving his right to recover money or other relief in any action that might be brought on their behalf by any other person or entity, including the U.S. Department of Labor ("DOL").

    C.    The Parties, knowingly and voluntarily waive, release and discharge each other from any and all claims, known and unknown, that they have and may have against the other up to the date of execution of this Agreement. This release is comprehensive and includes any claim that either Party could assert against the other based upon acts or omissions that occurred, or that could be alleged to have occurred, before the execution of this Agreement. This release is intended to be as comprehensive as can be conceived and as the law will allow, and includes but is not limited to claims raised or that could have been raised in the Litigation and claims based on, among other things: negligent or intentional tortious conduct; express or implied contract; covenants of fair dealing and good faith; wrongful discharge; the Family and Medical Leave Act; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Worker Adjustment Retraining and Notification Act; the Age Discrimination in Employment Act, the Florida Civil Rights Act; Florida's Whistleblower Act; any other federal or state common law or federal, state or local laws, ordinances, or regulations; any other public policy, contract, tort or common law theory; or any statutory or common law principle allowing for the recovery of fees or other expenses, including claims to attorneys' fees. This release does not apply to any claims that cannot be released as a matter of law, such as those that arise after the date Plaintiff executes this Agreement or claims for ERISA plan benefits or administrative charges of discrimination (although Plaintiff releases any right to monetary recovery in connection with such a charge). This Release is fully mutual as to the Parties as applicable.

      D.      If any claim is not subject to release, to the extent permitted by law, the Parties waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which any of the Employers and/or Plaintiff is a party.

      E.      Plaintiff understands this Agreement is a binding contract and that Plaintiff has twenty-one (21) days to review this Agreement and decide whether to sign it and that, after signed, Plaintiff has a period of seven (7) days to revoke it.

Each party understands that this provision means that the parties are releasing each other, and may not bring claims against each other, other than as set forth herein.

This Agreement shall affect the release of all claims that were, or could have been, asserted by and among Plaintiff and Defendants in the Litigation.

**10. Rights And Claims Excluded From Waivers And Releases.** This Agreement does not waive any rights that cannot be waived by law, including Saez's right to file a charge with an administrative agency and his right to participate in any agency investigation or proceeding.

**11. Transfer of Claims.** Saez represents and warrants he has not assigned, transferred, or purported to assign or transfer, to any person, firm, corporation, association or entity whatsoever, any released claim. Saez agrees to indemnify and hold Defendants harmless against, without any limitation, any and all rights, claims, warranties, demands, debts, obligations, liabilities, costs, court costs, expenses (including attorneys' fees), causes of action or judgments based on or arising out of any such assignment or transfer. The Parties further warrant that there is nothing that would prohibit each Party from entering into this Agreement.

**12. Strict Confidentiality.** The Parties agree that, unless he/it is compelled to do so by law, he/it/they will not disclose to any other person any information regarding the existence or substance of this Agreement, except that he/it may discuss the terms of this Agreement with his/its tax advisor, or an attorney with whom the respective Party chooses to consult regarding his/its consideration of this Agreement. This agreement may be disclosed (1) as necessary in any action relating to a breach of this agreement; (2) for enforcement of this Agreement; (3) to counsel for the Parties; (4) to the Parties respective Accountant(s); (5) for reporting to Taxing authorities; (6) the Parties' respective spouse(s); and/or (7) when otherwise required by law, provided that each such individual agrees to keep the disclosed information strictly confidential and to not disclose it to any other person. The Parties further affirm that they have not made any prior disclosures relating to this Agreement or the negotiations leading up to it that, if made after signing this Agreement, would have violated this obligation of confidentiality.

The Parties further agree that he/it/they will not initiate or participate in any discussion or communication concerning or relating to Plaintiff's employment with the Employers, the termination of that employment, and/or the Litigation. Neither Plaintiff nor Manuel Lopez shall disclose, communicate, make public or publicize in any manner any problems, issues or concerns they perceive they may have had with Plaintiff or the Employers or give any information or make

any statements which might tend to impugn, disparage, defame, discredit or detract from Employers and Plaintiff. Such communication includes all social media, including, but not limited to, Facebook, blogs, Twitter, Instagram, LinkedIn, YouTube, Vine, SnapChat, and/or similar social media platforms or advertising material. Plaintiff and Manuel Lopez acknowledge and agree that this prohibition extends to statements, written or oral, made to anyone, including, but not limited to, the news media, social media, any board of directors or advisory board of directors, competitors, strategic partners, and vendors. Plaintiff shall not interfere with Employers' relationship with, or endeavor to entice away from the Employers, any person who was or is an employee of Employers. The Parties understand and agree that this Paragraph is a material provision of this Agreement and that any breach of this Paragraph shall be a material breach of this Agreement, and that the other would be irreparably harmed by violation of this provision.

13. **No Re-Employment.** As further consideration for the payments described above, Plaintiff agrees that, because of circumstances unique to him (including his irreconcilable differences with the Employers), he is not qualified for re-employment with the Employers now or in the future and promise that he will not knowingly apply for or accept future employment with the Employers; and that in the event he does apply for such employment with the Employers, the Employers may reject his application legitimately and lawfully solely because he breached this promise and/or may thereafter terminate his employment, which termination shall be considered a legitimate business reason that is neither retaliatory nor discriminatory. Plaintiff further agrees that if the Employers employ him without having obtained a written waiver of this provision from an officer of the Employers, he will resign his employment with the Employers when asked to do so in writing by an officer of the Employers. Plaintiff also agrees not to visit any known office occupied by or jobsite worked on by Employers.

14. **Breach.** The Parties acknowledge that if either party breaches this Agreement, including but not limited to commencing a suit or action or complaint in contravention of this release and waiver of claims, the Parties' obligations to perform under this Agreement immediately shall cease, and the aggrieved Party shall be entitled to all remedies allowed in law or equity. The prevailing party in such an action is entitled to attorneys' fees and costs. Saez and Defendants hereby expressly waive any and all right to a trial by jury with respect to any action, proceeding or other litigation resulting from or involving the enforcement of this Agreement.

15. **Severability.** The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement and all other valid provisions shall survive and continue to bind the Parties.

16. **Neutral Employment Reference.** If, and only if, another person asks Plaintiff or Manuel Lopez., about the Litigation and/or Plaintiff's claims against the Employers, the response shall be limited to the following statement: "The matter has been resolved." In addition, Plaintiff and Manuel Lopez, agree not to disparage or say or write negative things about the Plaintiff, Employers, or their counsel. Plaintiff and Manuel Lopez, understand that the confidentiality of this Agreement and this non-disparagement provision are important parts of the consideration the Parties are giving to one another in this Agreement.

17. **Parties' Acknowledgement.** The Parties acknowledge and represent that each assumes the risk for any mistake of fact now known or unknown, and that each Party understands and acknowledges the significance and consequences of this Agreement and represents that its terms are fully understood and voluntarily accepted. Saez also acknowledges: (a) that he has consulted with or has had the opportunity to consult with an attorney of his choosing concerning this Agreement and has been advised to do so by Defendants; and (b) that Saez has read and understands this Agreement, is fully aware of its legal effect, and has entered into it freely and voluntarily based on his own judgment and/or Saez's attorneys' advice. Saez acknowledges that he has been given a reasonable time to consider the terms of this Agreement.

18. **Headings.** The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

19. **Execution.** This Agreement may be executed in counterparts and an executed version of this Agreement, if transmitted by facsimile or if scanned and emailed, shall be effective and binding as if it were the originally executed document.

02/03/2023

_____      *Iran Saez* (signature)
Date                            Iran Saez

_____      _____
Date                            Authorized Representative of Defendant,
                                Loman Distributors Inc.

2/3/2023                        *Manuel Lopez* (signature)
_____      _____
Date                            Manuel Lopez, Individually

Page 6 of 6



17. **Parties' Acknowledgement.** The Parties acknowledge and represent that each assumes the risk for any mistake of fact now known or unknown, and that each Party understands and acknowledges the significance and consequences of this Agreement and represents that its terms are fully understood and voluntarily accepted. Saez also acknowledges: (a) that he has consulted with or has had the opportunity to consult with an attorney of his choosing concerning this Agreement and has been advised to do so by Defendants; and (b) that Saez has read and understands this Agreement, is fully aware of its legal effect, and has entered into it freely and voluntarily based on his own judgment and/or Saez's attorneys' advice. Saez acknowledges that he has been given a reasonable time to consider the terms of this Agreement.

18. **Headings.** The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

19. **Execution.** This Agreement may be executed in counterparts and an executed version of this Agreement, if transmitted by facsimile or if scanned and emailed, shall be effective and binding as if it were the originally executed document.

| Date | Iran Saez |
|---|---|
| 2/3/2023 Date | *[signature: Manuel Lopez]* Authorized Representative of Defendant, Loman Distributors Inc. |
| 2/3/2023 Date | *[signature: Manuel Lopez]* Manuel Lopez, Individually |